## L. J. WISCOMB *et al.* v. L. D. CUBBERLY.

1. JURY TRIAL, *Refused — Liens — Priority.* Where the issues joined by the pleadings would require the granting of a jury trial upon demand, but the parties state to the court at the time of demand that the only matters in issue in the case are the priorities of certain alleged liens, the refusal of a jury trial is not error.

2. MORTGAGES — *Assignment — Unauthorized Release — Priority of Lien.* Where an unsatisfied mortgage on real estate, which was duly recorded, had passed through the hands of several parties, and one of them, to whom a written assignment of the mortgage had been made, which was placed on record without acknowledgment, undertook to release the mortgage long after he had assigned it to another, and when the record did not affirmatively show that he had authority to release the same, and subsequently another mortgage was executed by the owners upon the same real estate and accepted by the mortgagee in the belief that the first mortgage had been released of record by the action stated, *held,* that the subsequent mortgage was second and inferior to the first unsatisfied mortgage attempted to be released in the manner heretofore stated.

*Error from Osage District Court.*

ACTION on two promissory notes and to foreclose a mortgage. Judgment for plaintiff, *Cubberly,* July 1, 1889. The defendants bring the case here. The facts are set forth in the opinion.

*Gleed & Gleed,* for plaintiff in error Monadnock Savings Bank.

*P. L. Soper,* for plaintiffs in error Wiscombs and Topeka Investment and Loan Co. :

When the case was called for trial, defendants Wiscomb and wife and the Monadnock Savings Bank, each for themselves, demanded a jury to try the issues of fact, which demand was by the court overruled. It is made to appear that "it was stated in open court that the only matters in issue were priorities of the different alleged liens."

Plaintiff in error the Monadnock Savings Bank claims the protection of an innocent purchaser for value. It claims

that, as to it, the assignment from Hutchinson to Cartwright was void because not recorded. It also claims that the note sued on by Cubberly, which fell due February, 1882, was barred by the statute of limitations. It also claims some other points of error, which will be noted. The mortgage of the Monadnock Savings Bank was executed and delivered in February, 1886. This was subsequent to the execution of the Caylor mortgage, and subsequent to the assignment of that mortgage by Vancil to Hutchinson, and subsequent to the execution and recording of the release of the mortgage from John Hutchinson. The Monadnock Savings Bank was, therefore, an innocent purchaser for value, without notice, and is entitled to such protection, as against the Caylor mortgage. Comp. Laws of 1885, ch. 22, §§ 19–21.

A mortgagee is a purchaser. Devl. Deeds, § 631; *Jordan v. McNeil*, 25 Kas. 459; 52 Iowa, 67; 130 Mass. 289. The testimony is undisputed that the Monadnock Savings Bank was a purchaser for value, without actual notice. The assignment from Hutchinson to Cartwright was not recorded, and therefore the bank had no constructive notice of that assignment. How then can that assignment have any validity? Cubberly answers by asking that as to us the previous assignment from Vancil to Hutchinson be declared void. That Vancil assigned the Caylor mortgage to Hutchinson, in July, 1881, was a fact averred by both parties, and a fact of which both parties had actual notice. Cubberly depended upon that assignment for his title to the security. The assignment is indorsed on his own mortgage, and witnessed, and that mortgage contains a certificate of the register of deeds that it has been spread upon the records. He had actual notice of the assignment. The Monadnock Savings Bank finds a copy of that assignment upon the records. The assignment, it is true, was not acknowledged; but the Monadnock Savings Bank also found upon the records a duly-acknowledged release from Hutchinson to the assignee, which release recited that assignment, so that both parties, the Monadnock Savings Bank and

Cubberly, at all times had actual notice that the assignment had been made from Vancil to Hutchinson.

Cubberly asks to have that assignment declared void as to the bank, but valid as to himself; and he asks this by virtue alone of § 21 of the statute of conveyances, which says:

"No such instrument in writing shall be valid, except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the register of deeds."

Cubberly is within the exception. He, as well as the bank, had actual notice of the assignment, and therefore, as against him, it is perfectly valid. He cannot, in any event, have it declared valid as to himself and void as to the bank. He is estopped to have the assignment declared void when he sets up that assignment in the petition as a part of his case.

The legal effect of actual notice or knowledge is the same as that of constructive notice, which is a mere artificial substitute for knowledge. 2 Pom. Eq. Jur., ¶ 603. Both parties having actual notice, Cubberly is in precisely the same position that he would have been had the assignment, as recorded, been constructive notice. See Devl. Deeds, §§ 710, 718, 1000.

When the Topeka Investment and Loan Company and the Monadnock Savings Bank examined the records, they found an assignment of the Caylor mortgage, executed by Vancil, and witnessed, and certified to have been copied from the original instrument. Though this may not have been entitled to record, it was such actual knowledge as is discussed in Pomeroy's Equity Jurisprudence, vol. 2, p. 34. See, also, Devl. Deeds, § 707; Wade, Not., § 4; *Musick v. Barney*, 49 Mo. 458; *Gilbert v. Jess*, 31 Wis. 110; *Hastings v. Cutler*, 24 N. H. 471; *Musgrove v. Bonser*, 5 Ore. 313.

There were two assignments. That from Vancil to Hutchinson was witnessed and recorded, and, though not acknowledged, recited in a subsequent acknowledged release. All the parties to this controversy had actual knowledge of it; all pleaded it and depended upon it. The assignment, on the

other hand, from Hutchinson to Cartwright was willfully or negligently kept off the record for six years, and no party to this suit knew of it, or had any reason to suspect it, except Cubberly. The first assignment is valid, because all parties had full knowledge of it. The second is void, because it is not recorded, and nobody had the slightest suspicion of its existence.

A release by a mortgagee, although he may not own the mortgage or note, will protect the innocent purchaser for value. 9 Pa. St. 32; *Lewis v. Kirk*, 28 Kas. 497; 2 Jones, Mort., ¶ 958.

The court below decided the case on the authority of *Fisher v. Cowles*, 41 Kas. 418. In that case the assignment, being unacknowledged, was held bad as against a subsequent purchaser who had no actual knowledge of the assignment, and who relied on a release given by the original mortgagee. The court is asked by Cubberly, in this case, to protect him by holding void an assignment of which Cubberly had actual knowledge, and which same assignment he sets up in his petition in support of his title to the mortgage sued upon. See *Pritchard v. Kalamazoo College*, 47 N. W. Rep. (Mich.) 31; *Mason v. Beach*, 55 Wis. 611; *Bowling v. Cook*, 39 Iowa, 200; *Bank of Indiana v. Anderson*, 14 id. 544; 19 Hunter, 158; *Turpin v. Ogle*, 4 Bradw. 611; *Smith v. Keohane*, 6 id. 585.

In *Henderson v. Pilgrim*, 22 Tex. 464, the court uses the following strong language:

"It is the duty of the assignee of a mortgagee upon land to make his assignment a matter of record; and if he fail to do so he should suffer, rather than the subsequent purchaser, who is deceived by appearances, and has no notice or record to guide him."

The law in Kansas is in accordance with the above decisions. See *Lewis v. Kirk*, 28 Kas. 505.

The plaintiff bank has acted throughout the entire transaction with prudence and diligence, and in perfect good faith. Even if we give Cubberly credit for the utmost good faith in this transaction, it cannot be disputed that he has acted very

negligently. He and his immediate assignor held an instrument which was entitled to record nearly six years without recording it. Is it just that this plaintiff should suffer for this neglect?

*Pleasant & Pleasant,* for defendant in error:

Plaintiffs in error claim that the records showed that Hutchinson was assignee, and, therefore, a release from him protects them. This is erroneous. The assignment of the mortgage to Hutchinson was not acknowledged and not entitled to record, and no one could rely upon the record of it in a chain of title. Before they can take precedence of Cubberly, they must show that the record was in such condition as to make it appear affirmatively therefrom that the title was clear in their grantors. Warv. Abs. 334; *O'Neill v. Douthitt,* 40 Kas. 689.

If there were not enough legally recorded instruments on record to show title clear in the Wiscombs, or if the record was such as to leave it doubtful or uncertain who had title, then the effect could only be to stimulate those about to purchase to make inquiry. A purchaser examining the records can only be protected by the records of such instruments as are legally recorded, and most certainly not by those which have been spread upon the books contrary to law. Section 19 of the act regulating conveyances says that it is instruments that have been proven or acknowledged in a prescribed manner that may be recorded. Section 20 of said act says such instrument certified and recorded in this prescribed manner imparts notice of the contents thereof, and § 21 says no such instrument shall be valid, etc., until recorded. So it is clear that plaintiffs in error could not rely upon this record and be protected by it, as against the real owner of the first mortgage, unless this record of the assignment showed it to have been acknowledged and certified as the law requires. Spreading it upon the records would not give constructive notice of its contents, and imparted no notice whatever. *Fisher v. Cowles,* 41 Kas. 418; *O'Neill v. Douthitt,* 40 id.

689; *Wickersham v. Zinc Co.*, 18 id. 481; *Meskimen v. Day*, 35 id. 46; *Kelley v. McBlain*, 42 id. 765; Devl. Deeds, § 656.

Plaintiffs in error claim that under the mortgage law Hutchinson could release because he was assignee; but at the time of the pretended release he had not been assignee for over four years. *Lewis v. Kirk*, 28 Kas. 497, is not in point, because in that case the release was by the mortgagee; the release in *Fisher v. Cowles*, 41 Kas. 418, was made by the mortgagee; and in both of these cases the record showed affirmatively that the mortgagee had authority to release. In the latter case, the court holds the record of the assignment a nullity because not acknowledged.

Plaintiffs in error accuse Cubberly of neglect in not recording his assignment sooner. But, as a general rule, an assignee need not record an assignment, as the record of the mortgage protects him. 1 Jones, Mort., ¶ 474. The recording of an assignment is proper to protect from a release by the mortgagee. *Perkins v. Matteson*, 40 Kas. 167. *Lewis v. Kirk*, supra, only decides this far, and does not decide that a release is of any avail unless made by one who has on the face of the records an apparent right to release. Warv. Abs. 334, 339.

The opinion of the court was delivered by

JOHNSTON, J.: S. D. Cubberly brought this action to recover upon two promissory notes, executed by Henry S. Caylor and wife in favor of I. B. Vancil on February 1, 1881, one of which was for $200, payable on February 1, 1882, and the other for $200, payable on February 1, 1886, both bearing interest at the rate of 10 per cent, per annum from date, and also to foreclose a mortgage executed by Caylor and wife to Vancil upon 80 acres of land in Osage county. On each of the notes was indorsed a credit of $12.50, purporting to have been paid on August 27, 1884. It was alleged that the notes and mortgage had been transferred through several hands, for a valuable consideration, to S. D. Cubberly. Among others, William H. Wiscomb, L. J.

Wiscomb and the Monadnock Savings Bank were made parties defendant, it being stated that they claimed an interest in the property sought to be foreclosed, which was alleged to be inferior to that of Cubberly. By the answer of the Wiscombs, it appears that prior to February 1, 1886, they acquired the mortgaged property, and after an attempt to obtain a release of the prior mortgage executed to Vancil, made, executed and delivered to the Topeka Loan and Investment Company a mortgage for $550, due five years after date, and from the answer of the savings bank it appears that it purchased the Wiscomb note and mortgage, believing that the prior mortgage to Vancil had been released and discharged, and the bank claimed the protection of an innocent purchaser for value. When the cause was called for trial, the Wiscombs and the savings bank each for themselves demanded a jury to try the issues of fact, which demand was overruled. The court sustained the validity of the Cubberly mortgage, and found there was due him thereon the sum of $701.73, and, further, that there was due to the savings bank the sum of $761.21, and the amount found due to Cubberly was adjudged to be a first lien upon the real estate mortgaged, while that found due to the savings bank was decreed to be a second lien. The savings bank and the Wiscombs complain of this ruling and ask a reversal.

It is contended that the court erroneously denied the demand of the defendants Wiscombs and the savings bank for a jury to try the questions of fact put in issue between the parties. The pleadings, as framed, did present the issue of the payment of the notes which were secured by the Cubberly mortgage, and also that the first of these notes was barred by the statute of limitations. There was indorsed on the note a payment of $12.50, which, if paid at the time stated in the indorsement, and as a part payment of that note, enlarged the time so as to take it out of the statute of limitations. Upon the issues so framed, the defendants would ordinarily be entitled to a jury trial, and a refusal of a demand seasonably made would be error. In connection with this demand,

there is a statement in the record which is inconsistent with the demand, and leaves nothing for consideration in the case except the priorities of the respective liens of Cubberly and the savings bank. The court recites that it "was stated in open court that the only matters in issue were the priorities of different alleged liens." This statement, if liberally interpreted, so as to sustain the ruling of the court, brushes away the defense of payment and the statute of limitations. If the defendants publicly announced that they claimed nothing under those defenses, and relied alone on the priority of the savings-bank lien over that of the Cubberly lien, a jury trial was unnecessary and could not be compelled. Neither could the court, after such an announcement, be required to enter upon an examination of the merits of these questions.

It further appears that judgment for the full amount of the notes, less the amounts indorsed upon them, was rendered against the Caylors, Vancil and Hutchinson, by default, on May 3, 1888, and the trial of the issues between the remaining parties upon the priorities of the liens was not had until July 1, 1889. Under these circumstances, and considering the above-mentioned statement made by the court,

1. Jury trial, refused—liens—priority. there was no error in refusing the jury, nor was there anything left for the consideration of the court but the question of priorities. Can it be said that the court erred in holding the savings-bank mortgage to be inferior and second to the Cubberly mortgage? The Cubberly mortgage was executed February 1, 1881, in favor of Izri B. Vancil, who transferred it to John Hutchinson on July 18, 1881, by a written assignment; but this assignment, although recorded, was not acknowledged as the statute requires. Hutchinson assigned and transferred the mortgage to C. J. Cartwright on January 31, 1882, but the assignment was not recorded until December 19, 1887. According to the testimony of Cubberly, he acquired the note and mortgage by assignment and purchase on August 25, 1885. It appears that the Caylors conveyed the fee of the mortgaged land to Vancil on January 28, 1882, who in turn conveyed it to one

Lorenzo Cartwright, on January 31, 1882.    The last transfer
was made subject to the Cubberly mortgage, and it was so
stated in the deed of conveyance.    In November, 1883, Lo-
renzo Cartwright conveyed the fee of the property to Wil-
liam H. Wiscomb by general warranty deed.    On February
1, 1886, Wiscomb obtained a loan of $550 from the Topeka
Investment and Loan Company, and executed a mortgage
upon the land in question to secure the same, and on Febru-
ary 20, 1886, this mortgage was assigned and transferred to
the Monadock Savings Bank.    Prior to the execution of the
latter mortgage, Wiscomb, believing that the first mortgage
had been paid and discharged by Cartwright, applied to
Hutchinson, a previous assignee, for a release of the mort-
gage.    On December 24, 1885, in response to this request,
Hutchinson executed a release acknowledging the same, which
recited an assignment of the mortgage from J. B. Vancil to
Hutchinson, and which was placed on record in December,
1885.    The savings bank alleges that it purchased the sec-
ond mortgage relying on the records showing a release of the
first mortgage by Hutchinson, and without any notice that it
was unsatisfied.    The testimony is sufficient, however, to sus-
tain the holding of the court, that the debt secured by the
Cubberly mortgage was unpaid and that the lien was undis-
charged.    It is strange that Cubberly delayed the collection
of the debt and the foreclosure of the mortgage for more than
two years after they were assigned to him, but his good faith
and honesty in the transaction have been settled in his favor
by the general finding of the district court.    If Hutchinson
had had any right to execute a release, or if Wiscombs or the
savings bank had had any right to rely on the release exe-
cuted by Hutchinson, they might reasonably claim that their
mortgage was superior to Cubberly's.    When Hutchinson
undertook to release the Cubberly mortgage, he was not an
owner of the mortgage nor an assignee with the right to re-
lease the same.    Nearly four years before that time he had
assigned and transferred the same to Cartwright.    It is true
that a mortgagee, and probably an assignee who had assigned

a note and mortgage, may sometimes release the same so that a *bona fide* purchaser would take them free from the mortgage lien, although the note and mortgage are in the hands of an innocent holder and wholly unpaid; but before this can be done it must affirmatively appear from the record that such mortgagee or assignee had authority to release.   In this case, however, no one had any right to rely on the release by Hutchinson.   The assignment from Vancil to him was not acknowledged, and, although it was recorded, it does not impart constructive notice of such assignment.   No such instrument is entitled to record unless it is acknowledged, and the placing on record of an unacknowledged instrument without authority of law imparts no notice whatever.   (*O'Neill v. Douthitt,* 40 Kas. 689; *Fisher v. Cowles,* 41 id. 418; *Meskimen v. Day,* 35 id. 46; *Kelley v. McBlain,* 42 id. 764; *Wickersham v. Zinc Co,* 18 id. 481; *Lewis v. Kirk,* 28 id. 505; Devl. Deeds, § 656; Warv. Abs. 344.)   The assignment to Hutchinson was indorsed upon the mortgage, but this did not make it a part of that instrument, nor did it cure the defect in the matter of acknowledgment.   (*Fisher v. Cowles,* supra.)

It is said that the savings bank is an innocent purchaser for value, and as such is entitled to protection.   Can it be so regarded in this instance?   It knew of the existence of Cubberly's mortgage and that it secured negotiable notes liable to be transferred from hand to hand.   It also knew of the defective transfer which had been attempted, and it must be held to know that an unacknowledged assignment could not legally be admitted to the record, and that, therefore, Hutchinson had no apparent right to discharge the mortgage of record.   The release was made by a person who no longer had any interest in the note or mortgage, who in fact had no right to give a release, and, more than that, the records failed to affirmatively show that he ever had any right to discharge the mortgage of record.   It is stated that Cubberly claims title to the security through the same assignment, and should not be permitted to treat the transfer as valid as to himself, but void as to the

plaintiffs in error. By the findings of the court, Cubberly obtained them from the actual owner, and is a *bona fide* holder of the same. The assignment may be valid for the purpose of transferring title, and yet be insufficient to impart constructive notice of its existence. The release that Hutchinson attempted to make recited a conveyance made to J. B. Vancil, when the mortgagee's name, as has been seen, is Izri B. Vancil. Nothing was paid to Hutchinson at the time the release was executed, and it was done upon the representation of Wiscomb that the mortgage had been paid and that it was his duty to discharge it from the record.

Cubberly's conduct in failing to have the Cartwright assignment recorded, and in failing to apply to the Wiscombs for payment or to take steps toward the enforcement of the collection of this mortgage for more than two years after he acquired the same, is criticised. Some testimony is also offered that there was actually a payment in discharge of the mortgage by Cartwright, and it is evident that this was Wiscomb's understanding of the situation. Some of these transactions are not easily understood, but, as has been stated, the *bona fides* of the transaction, so far as Cubberly is concerned, has been sustained by the court. It may be said, however, that Cubberly testifies that he did apply to Wiscomb for payment, but that he was relying chiefly upon Cartwright; and he further states, that he had no actual knowledge 2. Mortgages— assignment— unauthorized release—priority of lien. of the savings-bank mortgage until about the time he began this foreclosure proceeding. But in view of the condition of the record at the time of the execution of the savings-bank mortgage, it must be held, under the authorities cited, that it was taken subject and second to the unsatisfied Cubberly mortgage. The judgment of the district court will therefore be affirmed.

All the Justices concurring.